[Cite as *State v. Carter*, 2014-Ohio-5212.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-13-1255

    Appellee                              Trial Court No. CR0201301019

v.

Robert Fitzgerald Carter                    **DECISION AND JUDGMENT**

    Appellant                             Decided:  November 21, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Thomas P. Kurt, for appellant.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, Robert Carter, appeals the judgment of the Lucas County Court of Common Pleas, sentencing him to life in prison with the possibility of parole after 30 years pursuant to a jury's determination of guilt on a charge of aggravated murder with an attendant firearm specification.  For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} Appellant's conviction stems from an incident that occurred on the evening of December 24, 2012, involving the murder of appellant's estranged wife, Wendabi Triplett. Appellant and Triplett had recently separated. Not willing to accept the separation, appellant made numerous contacts with Triplett's friends in an effort to discover Triplett's whereabouts. During these contacts, appellant expressed concerns that Triplett was cheating on him. On one such occasion, he informed Triplett's close friend, Tamara Russell, that he wanted to "slit [Triplett's] throat." Further, Russell testified that appellant told her "If I can't have her, ain't nobody have her. I just want to kill her. I just want her to be dead. I just want her dead. I just want to slit her throat and blow her head off."

{¶ 3} Early in the evening of December 24, 2012, Triplett traveled to her parents' home to attend a Christmas party with her family. She was accompanied by her son, Wa.B., her daughter, Wykeisha Boykin, and her brother, Marvin Sutton. At around 11:00 p.m., Triplett and the others departed from her parents' home and drove to another Christmas party at a friend's, Eva Weaver, home located in Toledo.

{¶ 4} In the meantime, appellant was driving around Toledo with his cousin, Craig Coleman. Coleman testified that he and appellant were "looking at some houses" on the night in question. He identified the vehicle that appellant was driving as a dark Ford

2.

Focus.[1] At one point during their drive, appellant stopped at a house for five minutes. Upon appellant's return to the vehicle, he informed Coleman that he had "something important to do, I don't want to get you involved, I'm going to drop you off." Appellant then proceeded to drop Coleman off prior to the time the shooting occurred.

{¶ 5} Upon Triplett's arrival at Weaver's residence, an assailant, later identified as appellant, confronted her on the street. Shortly thereafter, several gunshots were heard by witnesses who were present on the scene, including Boykin, Wa.B., and Sutton. After the first three rounds were fired, Triplett fell to the ground. After a brief pause, several more shots were fired at Triplett from point blank range. At trial, Sutton testified that he saw two men flee the scene after the shots were fired. He stated that he was "very positive" that appellant was one of those men. However, Sutton stated that appellant's face was partially covered by what appeared to be a ski mask.

{¶ 6} Boykin also testified at trial concerning the incident that occurred in front of Weaver's residence. Boykin was seated immediately behind Triplett at the time of the incident. During her testimony, Boykin identified appellant as the shooter. She testified that appellant's face was not covered. Further, when asked if she was sure that appellant was the one that shot her mother, Boykin stated, "I know for sure, I'm a hundred percent sure." Boykin stated that appellant fled the scene in a dark Ford Focus after shooting Triplett.

---

[1] The owner of the Ford Focus was later identified as Patrick Hayes. At trial, Hayes testified that he allowed appellant to borrow his vehicle on the night in question.

3.

{¶ 7} Wa.B. also testified at trial. On the night of the murder, Wa.B. was seated directly behind Sutton on the passenger side of Triplett's vehicle. Wa.B. heard "five to six" gunshots before realizing that Triplett had been shot. He testified that he saw two people pull up to Triplett's car driving the same car appellant was driving on a prior occasion.

{¶ 8} In addition to the foregoing witnesses, a nearby homeowner, Clarence Hornbeak, was outside of his home at the time and witnessed the murder. During his testimony, Hornbeak stated that he saw an assailant matching appellant's description fire three shots, pause for three to four seconds, and then proceed to fire two more shots toward the ground where Triplett was lying. After the shots were fired, Hornbeak heard someone shout "someone shot my mom," after which he saw the assailant flee the scene driving a dark blue Ford Focus.

{¶ 9} Immediately after the murder occurred, Toledo police were notified and an investigation was conducted. As part of the murder investigation, an autopsy was conducted to determine Triplett's cause of death. The results of the autopsy confirmed that Triplett died from multiple gunshot wounds. The most devastating gunshot wound was found on Triplett's neck. Upon further examination, the coroner, Dr. Cynthia Beisser, determined that the bullet that created the wound entered through the neck and severed Triplett's spinal cord, causing immediate and complete paralysis.

4.

{¶ 10} Appellant, being notified by his "second wife" that he was wanted by the Toledo Police Department for questioning in connection with Triplett's murder, surrendered himself to police on December 25, 2012. He was questioned by Toledo detective, Larry Anderson.

{¶ 11} Ultimately, on January 4, 2013, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.014(A) and (F) with an attendant firearm specification pursuant to R.C. 2941.145. Following pretrial procedures, a jury was empaneled and a trial began on September 3, 2013. During trial, the jury was shown a video of Anderson's interview of appellant. In that interview, Anderson asked appellant about his lengthy criminal record. This portion of the interview was supposed to be redacted prior to its showing at trial. However, due to the state's apparent oversight, the first four minutes of the unredacted version was shown at trial before the error was discovered. The portion of the video that was shown portrays Anderson entering the room with appellant. Detective Anderson seems to have a record of appellant's criminal history. Further, he makes a reference to seven pages of prior criminal acts, specifically calling attention to an aggravated menacing charge. As a result of the inadvertent disclosure, appellant's counsel moved for a mistrial. The trial court ultimately denied the motion, opting instead to question each juror individually to determine whether any prejudice resulted from the disclosure. After the court thoroughly questioned each juror, it provided an additional curative instruction and the trial continued.

{¶ 12} At the close of trial, the jury found appellant guilty of aggravated murder. The trial court continued the matter for sentencing and ordered the preparation of a presentence investigation report. On October 7, 2013, the trial court held a sentencing hearing, and appellant was sentenced to life in prison with the possibility of parole after 30 years. In addition, appellant received a three-year consecutive sentence pursuant to the firearm specification. It is from this judgment that appellant now appeals.

## B. Assignments of Error

{¶ 13} On appeal, appellant assigns the following errors for our review:

ASSIGNMENT OF ERROR I: The jury's verdict of guilty of aggravated murder is against the manifest weight of the evidence.

ASSIGNMENT OF ERROR II: The trial court erred in overruling defendant's motion for a mistrial following the inadvertent disclosure of defendant's criminal record to the jury.

ASSIGNMENT OF ERROR III: The trial court erred in permitting the State of Ohio to introduce, over the objection of the defendant, pursuant to Evid.R. 404(b), evidence that the victim had sought and obtained a civil protection order against the defendant.

{¶ 14} For ease of discussion, we will address appellant's assignments of error out of order.

6.

## II. Analysis

### A. The Trial Court Did Not Err in Denying Appellant's Motion for a Mistrial.

{¶ 15} In appellant's second assignment of error, he argues that the trial court erroneously overruled his motion for a mistrial following the inadvertent disclosure of his criminal record to the jury.

{¶ 16} A mistrial is an extreme remedy, "declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Regarding mistrial claims, the Supreme Court of Ohio has stated: "This court has * * * adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988), citing *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981); *Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 93 L.Ed. 974 (1949). To that end, a trial court's denial of a motion for mistrial will not be reversed absent an abuse of discretion. *State v. Rossbach*, 6th Dist. Lucas No. L-09-1300, 2011-Ohio-281, ¶ 39, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987).

{¶ 17} Here, appellant argues that the improperly admitted evidence was "so inflammatory that the court's admonition to the jury to disregard the information is insufficient to cure the error, and reversal is required." In response, the state contends

7.

that the "evidence against [appellant] was overwhelming and * * * the isolated reference to [appellant's] criminal record, followed by the individual juror voir dire and cautionary instructions, insured that [appellant] would still receive a fair trial."

{¶ 18} Regarding evidence of a defendant's prior criminal acts, the Supreme Court of Ohio has stated:

> The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand. *State v. Allen*, 29 Ohio St.3d 53, 55, 506 N.E.2d 199 (1987).

{¶ 19} Notwithstanding the foregoing, the trial court in this case made every effort to alleviate the prejudicial nature of the inadvertently disclosed evidence. Specifically, the trial court separately questioned each juror at length regarding whether the jurors heard the inadmissible evidence and, if so, whether they would be able to disregard it and render their judgment without regard to appellant's criminal record. Despite being satisfied with the jurors' responses to the questions, the trial court took further precautionary measures and provided a curative instruction. It is well-established that a jury is presumed to follow such an instruction. Appellant points to no evidence in the record to suggest that the jury did not follow the curative instruction in this case.

8.

{¶ 20} In light of the thorough voir dire and curative instruction provided by the trial court, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. Accordingly, appellant's second assignment of error is not well-taken.

**B. The Trial Court Did Not Err in Admitting Evid.R. 404(B) Evidence.**

{¶ 21} In his third assignment of error, appellant argues that the trial court erred in allowing evidence of a prior altercation he was involved in with Triplett's son, Leonard Davis.

{¶ 22} Approximately seven weeks prior to Triplett's murder, appellant approached Triplett's car while it was parked at her place of employment. Davis, among others, was waiting in the car for Triplett to clock in for work. Davis and appellant became involved in a verbal altercation, which ultimately led to appellant placing a handgun in Davis's face and threatening him. Appellant eventually departed without further incident. Upon learning of appellant's behavior, Triplett sought, and was eventually granted, a civil protection order against appellant. These facts were allowed into evidence at trial over the objection of appellant's counsel.

{¶ 23} Appellant's argument centers on the admission of "other crimes, wrongs or acts" under Evid.R. 404(B). Evid.R. 404(B) states in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

9.

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 24} In order to be admissible, "other acts" evidence under Evid.R. 404(B) must share a "temporal, modal, and situational relationship with the acts constituting the crime charged * * *." *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974).

{¶ 25} Here, appellant argues that the evidence was inadmissible as it was not used to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The state, for its part, asserts that the evidence was used in order to establish appellant's identity.

{¶ 26} In support of its argument, the state cites several cases it alleges are analogous to the case sub judice. One such case is *State v. Griffin*, 1st Dist. Hamilton No. C-020084, 2003-Ohio-3196. In *Griffin*, another murder case, the defendant insisted that he was not responsible for his wife's death, but, rather, that she took her own life by shooting herself in the head. In countering the defendant's assertion that he was not the shooter, the state elicited certain "other acts" evidence consisting of testimony from the victim's neighbors who had personally observed the defendant "either physically assault or threaten to kill his wife in the weeks before her death." *Id.* at ¶ 16. Further, the victim's coworkers testified that they had observed injuries on the victim's body about one month prior to the murder and were told by the victim that the injuries were the result of domestic violence at the hands of the defendant. *Id.* at ¶ 21.

10.

{¶ 27} On appeal, the defendant argued that the "other acts" evidence was used merely to demonstrate his propensity for committing the murder. At the outset, the appellate court noted defendant's claim that his wife committed suicide, finding that said claim placed the issue of identity squarely before the trier of fact. *Id.* at ¶ 17. Notably, the prior acts of domestic violence occurred within weeks of the murder. Consequently, the court held that these acts were "sufficiently connected in a temporal sense to the facts of [the victim's] death to be probative of the identity of the shooter." *Id.* at ¶ 20. Notwithstanding its admissibility under Evid.R. 404(B), the court went on to indicate that the admission of the "other acts" evidence would have been harmless in any event in light of the "substantial other evidence supporting the guilty verdict." *Id.* at ¶ 24, citing *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

{¶ 28} We find that *Griffin* is analogous to the present case. Indeed, both the defendant in *Griffin* and the appellant in this case placed the identity of the killer at issue by denying any involvement with the death of the victims. Additionally, the "other acts" offered into evidence in both cases was temporally related to the offense. Finding this case analogous to *Griffin*, and further finding the court's reasoning in that case persuasive, we conclude that the trial court did not abuse its discretion by allowing evidence of the existence of a civil protection order against appellant and the facts surrounding the procurement of the order. *See also State v. Newcomb*, 3d Dist. Logan No. 8-01-07, 2001 WL 1504260 (Nov. 27, 2001) (affirming trial court's admission of Evid.R. 404(B) evidence in order to identify the defendant as the murderer and rebut his

11.

claim that his brother murdered the victim); *State v. Thompson*, 8th Dist. Cuyahoga No. 81322, 2003-Ohio-3939 (allowing evidence of prior domestic violence where it was relevant to prove the defendant's identity and the domestic violence occurred within close proximity to the time of the murder).

{¶ 29} Accordingly, appellant's third assignment of error is not well-taken.

**C. Appellant's Conviction is Not Against the Manifest Weight of the Evidence.**

{¶ 30} In his first assignment of error, appellant argues that the jury's guilty verdict is against the manifest weight of the evidence. Specifically, appellant asserts that the state's evidence on the issue of identity "fell far short of proof beyond a reasonable doubt."

{¶ 31} When reviewing a manifest weight claim,

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220.

{¶ 32} Having carefully considered the record in its entirety, we do not find that this is the exceptional case warranting reversal on manifest weight grounds. Appellant

12.

argues that the testimony provided by Boykin and Wa.B. failed to establish his identity as the shooter. Moreover, he contends that the conflicting testimony as to whether one or two individuals approached Triplett immediately before the shooting raises another question as to the shooter's identity. Finally, appellant makes much of the fact that "the lighting on the street at the time of the shooting was less than [ideal], and the individual who shot Ms. Triplett wore a mask."

{¶ 33} Despite appellant's contention that the evidence weighs heavily against a finding that he was the shooter, the record contains ample evidence on the issue of identity. In particular, Boykin and Wa.B. each testified that they witnessed appellant shoot their mother. Boykin, upon questioning as to whether she was sure that appellant was the shooter, stated, "I know for sure, I'm a hundred percent sure." Further, Sutton stated that he was "very positive" that appellant was one of the two men who fled the scene after the shooting. In providing these statements, none of the witnesses indicated a difficulty in identifying the shooter due to poor lighting. Indeed, such lighting would have likely made little difference in light of the proximity of the witnesses to the shooting. With regard to the appellant's contention that the shooter was wearing a mask, we note that there was conflicting testimony as to that fact. While Sutton thought the shooter was wearing a mask, he was equivocal on that point. In any event, Sutton testified that appellant's face was only partially covered and he was still able to identify appellant as the shooter. Boykin, on the other hand, testified with certainty that appellant was not wearing a mask.

13.

{¶ 34} In light of the abundant evidence contained in the record relating to the shooter's identity, we conclude that appellant's conviction was not against the manifest weight of the evidence.

{¶ 35} Accordingly, appellant's first assignment of error is not well-taken.

### III. Conclusion

{¶ 36} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                          _____
                                              JUDGE
Thomas J. Osowik, J.                     

Stephen A. Yarbrough, P.J.        _____
CONCUR.                                             JUDGE

                                           _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.