[Cite as *State v. Scott*, 2020-Ohio-4854.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio

    Appellee

v.

Mychal Scott

    Appellant

Court of Appeals No. S-19-030

Trial Court No. 18 CR 770

**DECISION AND JUDGMENT**

Decided: October 9, 2020

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, for appellee.

John A. Brikmanis, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** In this appeal appellant, Mychal Scott, appeals from the May 21, 2019 judgment of the Sandusky County Court of Common Pleas sentencing him following his jury conviction of two counts of felonious assault, R.C. 2903.11(A)(1) and (2), which were merged for sentencing, and two counts of kidnapping, R.C. 2905.01(A)(2) and (3)

involving two victims. All the counts included a firearm specification. The trial court sentenced appellant to an aggregate term of imprisonment of 24 years. The trial court also classified appellant as a violent offender. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellant asserts the following assignments of error:

Assignment of Error I.

Trial Court erred to the substantial and material prejudice of defendant-appellant when it provided to the jury notice of prior convictions.

Assignment of Error II.

Trial Court erred to the substantial and material prejudice of defendant-appellant when prosecution's star witness made statements regarding defendant's conviction.

Assignment of Error III.

Trial Court erred to the substantial and material prejudice of defendant-appellant when Trial Court erred in sentencing when Court found Defendant to be Repeat Violent Offender.

Assignment of Error IV.

Trial Court erred to the substantial and material prejudice of defendant-appellant when it permitted prosecutor to play a highly prejudicial CD.

2.

Assignment of Error V.

Trial Court erred to the substantial and material prejudice of defendant-appellant when the Court erred in imposing additional terms for gun specifications.

Assignment of Error VI.

The decision on Count 4 was against the manifest weight of the evidence.

Assignment of Error VII.

Trial Court erred when not declaring a mistrial when a juror admitted to discussing the case with other jurors in disregard of the Court's instructions.

{¶ 3} Appellant was indicted in a seven-count indictment involving two victims. At trial, the following evidence was admitted along with the recorded interviews, photographs, a surveillance recording, phone records, and DNA analysis.

{¶ 4} For purposes of the repeat violent offender specification, an officer who investigated a robbery of a restaurant in 2005 testified appellant was convicted of the offense.

{¶ 5} With respect to the present offense, Sergeant Arquette of the Sandusky County Sheriff's office testified that on June 19, 2018, he responded to a call of a disturbance at a duplex in Hessville, Ohio, shortly after 11:00 p.m. Deputy Hamilton arrived shortly afterward. The sergeant found no one at the home, but based on the

3.

observations of a neighbor, he looked into the home and saw blood on the floors and walls. Simultaneously, a call for aid at a nearby residence was received, and the sergeant went to that residence and found an injured man, hereinafter the "victim."

{¶ 6} The deputy remained at the duplex gathering evidence and photographing the interior and exterior of the home. Blood stains were observed from the front door to the back door inside the home. A forensic scientist testified the victim was the major contributor to the blood samples. The photographs depicted blood stains on the front door, in the living room and kitchen, on a white bathroom towel, on the doorjamb leading from the living room to the stairs, on the wall, on the stairs, and on the wall and light switch next to the front entrance; a knotted electrical cord or video game cord; and a damaged television. The deputy also photographed a car in the driveway because it was warm to the touch. He spoke to Austin Moyer, who indicated the resident of the duplex was at work.

{¶ 7} A neighbor testified she heard someone yelling for help, banging and yelling, and the sound of someone hitting something. She also saw a suspicious light-colored SUV circling around the area, unfamiliar cars parked at the duplex, several people leave the duplex and drive off with the SUV, two people run across the street whom she recognized as the resident of the duplex and a neighbor, Moyer, and a third unknown male running into the adjoining field who kept falling down.

{¶ 8} The sergeant photographed the victim's injuries, which included lacerations to the face, which were hemorrhaging, bloody clothes, and a missing portion of his ear.

4.

The victim stated appellant and another man, later identified as Gardale Hurst had kidnapped and ambushed the victim.

{¶ 9} The victim testified that earlier that evening, he had picked up Bailey Chudzinski at the North Street Apartments, as seen on a recording from the surveillance system for the apartment complex. The victim drove Chudzinski to the duplex, where Chudzinski indicated she was going to be staying. The victim was led to believe the occupant was working that evening. Chudzinski entered the duplex first. The victim could not recall if the door was open or if she used a key. The two started to watch a movie and were sitting on the couch smoking. While he went into the kitchen for an ashtray, Chudzinski took their bags upstairs.

{¶ 10} While the victim's back was turned, appellant walked up from behind and said, "You know what time it is." The victim immediately recognized that Chudzinski had set him up. Appellant directed the victim to walk into the living room and held a gun on his back. The victim bolted for the door, but before he could get the door open, appellant caught up and pulled the victim back into the apartment. Hurst appeared and held the victim in a choke hold and blocked the door. Appellant became more aggressive and pistol whipped the victim, hitting his face and head as they moved through the house. Hurst had a gun also. The victim believed appellant's gun was silver and Hurst's was black. The victim asserted he was unable to defend himself because he did not have a gun. He denied knowing what caused the attack and testified appellant said he wanted to know where the money was or have someone bring it to him. During the beating, the

5.

victim saw Chudzinski, the resident of the duplex, and Moyer come downstairs. Moyer looked scared and the resident was screaming.

{¶ 11} The victim passed out and when he woke up, appellant kicked the victim in the rib and started tying him up with a VCR cord. A forensic scientist testified the DNA found on the electrical cord had two major contributors, but excluded the victim. Hurst took over as appellant took the victim's phone and car keys and went outside. Hurst struggled to get victim's hands tied before going outside as well. The victim worked his hands free and ran for the front door. Moyer told Chudzinski to stop the victim from escaping, but he was able to get out and run toward a neighboring home.

{¶ 12} The victim testified he was diagnosed with a closed head injury with concussion, facial laceration, a laceration of the left earlobe; right frontal and periorbital scalp hematoma with interval visualized right orbital or maxillary sinus fracture.

{¶ 13} On cross-examination, appellant played portions of the victim's interview with the police to show the victim did not give consistent details of the events of the assault. However, the victim explained the police report was incorrect in reporting that he did not know his attacker or that the beating started while he was on the couch.

{¶ 14} Detective Arp of the Sandusky County Sheriff's office also recorded an interview with the victim. The detective found the victim's injuries were consistent with his assertion that he was assaulted. The victim identified appellant as the attacker. The detective also interviewed the duplex resident, who denied having been there that night. He extracted call lists from the cell phones of the resident and Moyer, who indicated

6.

appellant had taken their phones but they were recovered the next day. The detective confirmed phone calls and texts were made between the phones in the early morning hours after the attack. However, he had no way of establishing who was using either phone. Later, the resident changed her statement and admitted to having been present during the beating. The detective also interviewed Hurst and recorded the interview.

{¶ 15} The duplex resident testified at trial that she was supposed to be working that night but had called in sick. Moyer, Chudzinski, the victim, appellant, and another male she did not know came over uninvited just as she was leaving to go to the emergency room. Moyer, whom she knew and saw every day because he lived across the street, came over first and told the resident appellant and Chudzinski were coming over to talk. She discovered Moyer changed the code on her door lock to keep it unlocked because appellant and Hurst entered her house without knocking. While she knew of appellant, she was uncomfortable with him being there. She gave her phone to appellant when he demanded it because she was scared and did not know what was happening. While she recalled seeing one gun, she could no longer remember who had been carrying it. She felt like a hostage in her own home and attempted to get away by telling appellant she had to get something from her car; but, appellant sent Hurst with her and she felt compelled to return.

{¶ 16} Appellant directed her and Moyer to go upstairs and for Moyer to watch for someone to arrive. She knew when they arrived and later Chudzinski joined them. The resident complied because she felt threatened. The resident did not see the victim arrive,

7.

but she heard fighting and appellant and Hurst talking. She did not know how the fight started, but heard what sounded like two people beating on one person. After a short time, the three returned downstairs and the resident saw the victim lying face down in the living room. He looked distressed and was lying in a pool of his own blood. His arms were tied behind his back. While Hurst and appellant were outside, the victim got loose and ran for the door. Chudzinski tried to reach the door first, but the victim ran outside. Afterward, everyone went out the front door. The resident followed Moyer across the street. She could hear the victim calling for help as he ran. Appellant took her car when he left without her permission, but she was able to get it and her phone back the next morning. The next day, she found a hat in her house, which was determined by a forensic scientist to contain the DNA from appellant and Hurst.

{¶ 17} Appellant presented evidence that calls were between the resident's and Moyer's cell phones in the early morning hours of June 20, 2018. The resident denied making any phone calls because appellant had taken her phone. She also testified she never gave her password to appellant. While she admitted she had been listening to Moyer's advice, she eventually decided to tell the police the truth and admit she had been home that night. She testified she had initially denied being there because she was scared. After the incident, some of the victim's family were harassing her and someone threatened her to report what she knew.

{¶ 18} The defense called four witnesses, one of whom had no relevant testimony. His lawyer testified he had been unable to subpoena Moyer to testify. In questioning

8.

Detective Arp, appellant inquired whether there was any evidence pertaining to appellant besides his hat found at the scene and the detective responded negatively. Finally, Hurst admitted he had been at the duplex that evening and went upstairs to talk to the resident whom he had recently met. Hurst denied knowing the victim, but when he heard "tussling" and "rumbling" noise downstairs, he went to investigate. He saw appellant and the victim wrestling. Because the victim had a gun, Hurst assisted appellant to get the gun away from the victim. Hurst admitted striking the victim several times with the pistol. Hurst continued to fight the victim even after appellant ran out the back door. Hurst testified he never saw appellant strike the victim with the gun, but did see appellant kick the victim. Hurst also admitted he threw the victim's head into the television and that he tied up the victim with the cords admitted into evidence because he was afraid of him. Hurst testified he asked the resident for her car keys so he could get away. He recalled that the victim was bleeding a little after the struggle. Hurst admitted he had been wearing the hat found at the scene.

**Mistrial**

{¶ 19} The first, second, fourth, and seventh assignments of error involve the trial court's denial of appellant's motion for a new trial or the trial court's failure to sua sponte order a mistrial. The determination of whether to grant a Crim.R. 33(A)(1) motion for a new trial or sua sponte declare a mistrial are matters left to the sound discretion of the trial court. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 92. The trial court has a duty to ensure the defendant receives a fair trial and the ends of

9.

justice are served. *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 41; *State v. Motz*, 12th Dist. Warren No. CA2009-10-137, 2010-Ohio-2170, ¶ 12. The trial court should declare a mistrial only when there is a "manifest necessity," there is "no reasonable alternative," and "the public interest in fair trials designed to end in just judgments is best served by ordering a mistrial." *State v. Gonzalez*, 6th Dist. Huron No. H-99-002, 1999 WL 1101976, *3 (Dec. 3, 1999), citing *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981).

{¶ 20} Generally, we defer to the trial court's exercise of its discretion because it is in the best position to determine if the jury has been compromised or whether appellant was denied a fair trial. *Ahmed*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 42, citing *State v. Glover*, 35 Ohio St.3d 18, 20, 517 N.E.2d 900 (1988). We also presume the jury will fulfill its duty and follow the curative instructions of the court. *Ahmed* at ¶ 93; *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995), citations omitted. Therefore, we reverse the trial court's decision only when the appellant can show the trial court abused its discretion by entering a judgment that is unreasonable, arbitrary, and unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, ¶ 130. Our review is also limited by the harmless error rule, which permits harmless error to be found in cases where there is overwhelming evidence of guilt. *Berger v. United States*, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *State v. Hill*, 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996); *State v. Zuern*, 32 Ohio St.3d

10.

56, 61, 512 N.E.2d 585, 590 (1987); *State v. Grether*, 9th Dist. Summit No. 28977, 2019-Ohio-4243, ¶ 28.

{¶ 21} In his first assignment of error, appellant moved for a new trial after the parties discovered that two exhibits (evidencing appellant's prior robbery conviction) had erroneously been given to the jury during deliberations and the error was not discovered until the jury inquired about reviewing another exhibit. While the trial court indicated it would poll the jury, it did not. Instead, the trial court gave an immediate curative instruction that the jurors were not to consider these two exhibits for any purpose. Shortly thereafter, the jury reached its verdict. Appellant argued the trial court should declare a mistrial on the ground that the submission of his prior criminal record to the jury deprived him of having a fair trial. The trial court denied the motion.

{¶ 22} The existence of a prior criminal act is "such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule * * * [because the] effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand." *State v. Allen*, 29 Ohio St.3d 53, 55, 506 N.E.2d 199 (1987). In the *Allen* case, the Ohio Supreme Court found a curative instruction was insufficient to cure the erroneous disclosure of a prior offense. *Id*. However, in every case, the trial court exercises its discretion to determine if the prejudice resulted from the disclosure.

{¶ 23} In *State v. Carter*, 6th Dist. Lucas No. L-13-1255, 2014-Ohio-5212, ¶ 15-17, we addressed a similar situation where the defendant's criminal record was

11.

inadvertently disclosed to the jury. Carter argued the evidence was so inflammatory that a curative instruction was insufficient to cure the error. We found, however, no abuse of discretion by the trial court in denying a motion for a new trial because the court had separately questioned each juror to ensure that if they saw the information, they could disregard it in their deliberations and the trial court also gave a curative instruction to the jury. There was no indication the jury had not followed the curative instruction and, therefore, we presumed that the jury fulfilled its duty.

{¶ 24} In the case before us now, we find the failure to question the jury after it had been deliberating for some time with the prior conviction evidence, prevented the trial court from determining whether the documents had already improperly influenced the jury's decision. However, the court had instructed the jury not to consider appellant's prior conviction for any purpose. Even if the trial court erred by not inquiring further, we find the error was harmless in this case because there was overwhelming evidence of appellant's guilt. The victim knew appellant and identified him as his attacker and other witnesses corroborated the victim's account of the attack. Appellant's first assignment of error is found not well-taken.

{¶ 25} In his second assignment of error, appellant argues the testimony of the victim, regarding appellant's prior convictions, deprived him of a fair trial, especially in light of the fact that the prior conviction evidence was also given to the jury.

{¶ 26} Appellant, elicited a brief, isolated statement from the victim during cross-examination that he had known appellant since the time he had robbed a restaurant. The

12.

trial court immediately gave a curative instruction to the jury to disregard the victim's testimony. During a sidebar, the court discussed whether the jury even noticed the answer and whether it would be better not to call attention to the comment. However, the court gave a curative instruction to ensure the jury did not consider the statement in its deliberation.

{¶ 27} First, we find that because the statement was brief and there was an immediate curative instruction, the trial court did not abuse its discretion by failing to declare a mistrial. Twice the jury was instructed to disregard evidence of a prior crime or conviction. We presume the jury followed the court's instruction. Nonetheless, we also find the error was harmless because of the overwhelming evidence of guilt in this case. Finally, the doctrine of invited error prevents defendant from asserting an error arising from the disclosure of a prior conviction as a result of his cross-examination of the witness. *State v. Grether*, 9th Dist. Summit No. 28977, 2019-Ohio-4243, ¶ 27. Therefore, we find appellant's second assignment of error not well-taken.

{¶ 28} In his fourth assignment of error, appellant argues the trial court erred by allowing appellant to play additional portions of the recording of the duplex resident's interview with Detective Arp after finding it was littered with hearsay. Appellant argues on appeal the trial court should have declared a mistrial.

{¶ 29} Appellant introduced this recording during cross-examination by playing portions to show inconsistencies in the resident's statements to the police and to challenge her veracity. At first, the trial court denied appellee's request to play the entire

13.

recording because it was littered with hearsay. However, the court allowed the prosecution to play the recording to add context to the duplex resident's statements to the police and rebut the implication that she was lying at trial because her testimony did not match her initial statements to the police. The court indicated it would deal with objections as they arose, but appellant did not assert any specific objection as the recording played.

{¶ 30} Appellant later objected to the admission of the recording into evidence. The court overruled appellant's objection because appellant had not objected at the time appellee played the additional portions of the recording for the jury. Eventually, appellant stipulated to admission of the exhibit to prevent the prosecution from recalling the detective for further questioning. By doing so, appellant cannot now complain that admitting the recording was error. Furthermore, when the jury sought to listen to the recording of the interview during jury deliberations, the court instructed them to rely upon their memories of what they had heard during trial. Thus, although admitted into evidence, the recording was not actually reviewed by the jury a second time.

{¶ 31} Nonetheless, appellant argues on appeal that it was error to play additional portions of the recording for the jury to hear. He argues the additional recordings introduced the duplex resident's prejudicial statements that appellant "could kill her or her mother or her family" and that appellant "told Hurst to kill [the victim]." Furthermore, the detective stated during the interview that Moyer's statement corroborated the duplex resident's accounts.

14.

{¶ 32} Upon a review of the transcript, we find appellee sought to rebut appellant's attack on the duplex resident's veracity at trial by establishing she had been afraid of appellant and her fear initially motivated her to lie to the police about what happened. Therefore, her recorded statements were not being used to establish the truth of the matter asserted. Evid.R. 801(C). Furthermore, the declarants, the duplex resident, and the detective testified at trial and were subject to cross-examination.

{¶ 33} Appellant further argues the allegedly highly prejudicial statements on the recording affected one juror because she sent a note to the court after closing arguments indicating she was uncomfortable with the defense knowing the names and faces of the jury members. Because this note came after closing arguments, we cannot conclude the juror's fear was motivated by the recording rather than from all the testimony and evidence presented. Therefore, we reject this argument.

{¶ 34} Appellant also argues another juror was also biased by the recording evidence. However, that juror was excused after he disclosed he was related to the resident of the duplex (although he did not personally know her) despite indicating he could still be fair and impartial. Since the juror was excused, we reject this argument.

{¶ 35} Therefore, we find the decision to allow the state to play additional portions of the recording was not an abuse of the trial court's discretion and did not result in unfair prejudice. Finally, even if the admission of the additional evidence was error, it was harmless because of the overwhelming evidence of guilt. Appellant's fourth assignment of error is found not well-taken.

15.

{¶ 36} In his seventh assignment of error, appellant argues he was denied a fair trial when a juror discussed the case with other jurors in disregard of the trial court's instructions. Appellant also asserts the jury was "rogue" and never reported jury misconduct.

{¶ 37} Appellant asserts that one juror purposely embedded himself in the jury by denying he knew the parties and later disclosed to the jurors that he was related to the resident of the duplex. Furthermore, after discovering his relationship to the resident, the juror violated the trial court's instructions and told other jurors about his relationship to a witness. Appellant also asserts the other jurors heard this information and did not report the information to the court.

{¶ 38} The Sixth Amendment and Due Process Clause of the Fourteenth Amendment to the United States Constitution protect the right to a trial by a fair and impartial jury. Furthermore, even if juror misconduct occurred, the defendant must still establish the misconduct resulted in prejudice sufficient to warrant a new trial. Crim.R. 33(A); *State v. Swing*, 2017-Ohio-8039, 98 N.E.3d 828, ¶ 76 (12th Dist.). The trial court exercises its discretion when determining whether jury misconduct resulted in a manifest necessity to declare a mistrial. *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 40. The credibility of the juror involved is a matter for the trial court to determine. *State v. Morris*, 9th Dist. Summit No. 25519, 2011-Ohio-6594, ¶ 32. On appeal, we will overturn the trial court's decision only if appellant shows an abuse of discretion. *Swing* at ¶ 77.

16.

{¶ 39} We find no evidence of prejudice in this case before us. There is no evidence the juror purposefully misled the parties during voir dire. *Id.* at ¶ 79 ("[a] court may infer bias if it finds *deliberate* concealment"). It was not until after the resident of the duplex testified and mentioned her mother's name, that the juror recognized the witness as his cousin's daughter, whom he had never met. Furthermore, the juror indicated he accidently told other jurors about what he discovered, but that only one seemed to notice and indicated he should tell the court. The trial court immediately dismissed the related juror despite his assurances he could be fair and impartial.

{¶ 40} Appellant asserts the court should have inquired further as to whether the other jurors were tainted because of this disclosure even though the defense never requested a further investigation. We disagree. The juror recognized his relationship to the witness prior to deliberations and was excused. Appellant has failed to demonstrate how knowing about the distant relationship between the juror and the witness would have resulted in bias. The related juror also indicated that only one other juror who seemed to be listening suggested the information be disclosed to the court. Therefore, we find there was no basis for declaring a mistrial based on the juror's statement. Therefore, we find appellant's seventh assignment of error not well-taken.

{¶ 41} Accordingly, we find appellant's first, second, fourth, and seventh assignments of error not well-taken.

17.

**Sentencing**

{¶ 42} Appellant's third and fifth assignments of error relate to sentencing. In his third assignment of error, appellant argues the trial court erred by finding appellant to be a repeat violent offender.

{¶ 43} The trial court ordered that appellant serve ten years in prison on each of the repeat violent offender specifications contained in Count 2 and Count 3, R.C. 2929.01(CC) and 2929.14(B)(2)(a), to run concurrently to each other but consecutive to the underlying prison terms imposed in each count.

{¶ 44} Appellee established that appellant had a prior conviction of robbery with a firearm. However, the conviction was based on a guilty plea and no evidence was presented. Therefore, appellant argues, there is insufficient evidence to establish that he caused or attempted to cause serious physical harm in the prior offense to support the RVO specification.

{¶ 45} R.C. 2941.149(D) provides that a repeat violent offender specification has the same meaning as used in R.C. 2929.01(CC). That section provides:

> (CC) "Repeat violent offender" means a person about whom both of
> the following apply:
> 
> (1) The person is being sentenced for committing or for complicity
> in committing any of the following:

18.

(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;

(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

{¶ 46} Appellant was charged with committing felonious assault, R.C. 2903.11(A)(2), a second-degree felony, and kidnapping, R.C. 2905.01(A)(3), a first-degree felony. Appellee presented evidence of appellant's prior conviction to robbery, R.C. 2911.02(A)(2), a second-degree felony. Each of these offenses are an "offense of violence." R.C. 2901.01(A)(9)(a). Therefore, both requirements of R.C. 2929.01(CC) were met in this case.

{¶ 47} Appellant argues the court also needed to find serious physical harm occurred in the present and prior offenses citing *State v. Sims*, 8th Dist. Cuyahoga No. 84090, 2005-Ohio-1978, ¶ 39-42 (applying former R.C. 2929.01(DD)). However, R.C. 2929.01(DD) was amended and replaced with R.C. 2929.01(CC) and R.C. 2929.14(B)(2)(b). R.C. 2929.14(B)(2)(b) further provides that to impose an additional penalty in the form of a prison sentence upon a repeat violent offender of one to ten years, the court must find:

19.

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offender within the preceding twenty years has been convicted of or pleaded guilty to three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code, including all offenses described in that division of which the offender is convicted or to which the offender pleads guilty in the current prosecution and all offenses described in that division of which the offender previously has been convicted or to which the offender previously pleaded guilty, whether prosecuted together or separately.

(iii) The offense or offenses of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

{¶ 48} Therefore, under the new statutory provisions, the defendant must have pled guilty to or been convicted of a repeat violent offender specification; the defendant, in the preceding 20 years or in the current prosecution, has pled guilty

to or been convicted of three or more offenses described in R.C. 2929.01(CC)(1), and the current offense to which the defendant has pled guilty or been convicted is a first-degree felony and the court does not impose a sentence of life imprisonment without parole or the current offense is a second-degree felony that is an offense of violence and which the trier of facts has found it involved either an attempted, threated, or actual serious physical harm to a person. *See State v. Lodwick*, 2018-Ohio-3710, 118 N.E.3d 948, ¶ 36-37 (4th Dist.) (*State v. Sims*, 8th Dist. Cuyahoga No. 84090, 2005-Ohio-1978, 2005 WL 984499 has been superseded by statute).

{¶ 49} Therefore, there is no longer a statutory requirement to find the prior conviction involved serious physical harm. Appellant's third assignment of error is found not well-taken.

{¶ 50} In his fifth assignment of error, appellant argues the trial court erred by imposing additional terms of imprisonment for the firearm specifications when there was no evidence the gun was operable or readily rendered operable because the gun was never recovered.

{¶ 51} Counts 2, 3, and 4 included a firearm specification pursuant to R.C. 2941.145(A). R.C. 2923.11(B)(1) defines a firearm as an operable deadly weapon. The statue also provides the prosecution can establish this fact through circumstantial evidence. R.C. 2923.11(B)(2). *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) paragraph one of the syllabus (implicit threats are sufficient to establish the use of a firearm under the statute); *State v. Murphy*, 49 Ohio St.3d 206, 208,

21.

551 N.E.2d 932 (1990) (totality of the circumstances established beyond a reasonable doubt that the defendant possessed a firearm).

{¶ 52} Therefore, appellee was required to establish the gun used by appellant was operable. Appellant relies on *State v. Johnson*, 9th Dist. Lorain No. 14CA010688, 2016-Ohio-872, ¶ 13; *State v. Henry*, 4th Dist. Gallia No. 10CA20, 2012-Ohio-371, ¶ 17; *State v. Webb*, 72 Ohio App.3d 749, 754, 596 N.E.2d 489 (6th Dist.1991). However, all of these cases are distinguishable on their facts because they involved the theft of a gun and the state did not present any evidence to establish the gun was operable.

{¶ 53} Instead, the case before us is similar to *Thompkins*, *supra*, in that the jury could infer from the circumstantial evidence (appellant's use of the gun to motivate others to comply with his demands) that the gun was operable. Therefore, we find appellant's fifth assignment of error not well-taken.

**Conviction**

{¶ 54} Finally, in his sixth assignment of error, appellant argues his conviction was contrary to the manifest weight of the evidence. More specifically, appellant argues that there was insufficient evidence to establish he kidnapped the duplex resident. He argues her testimony is inconsistent because she changed her story and she admitted that she was never kidnapped or threatened.

{¶ 55} Appellant was charged with one count of kidnapping the duplex resident, a violation of R.C. 2905.01(A)(2), which provides that:

22.

No person, by force, threat, or deception, * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony.

{¶ 56} Even when there is sufficient evidence to support the verdict, the appellate court may decide that the verdict is against the weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. A challenge to the weight of the evidence questions whether or not the greater amount of credible evidence supported the findings of fact. *Eastley*. When weighing the evidence, the appellate court must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, at 546-547, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When weighing the evidence, the appellate court must presume the factfinder properly assessed the evidence. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984) (citation omitted).

{¶ 57} The duplex resident testified at trial that Chudzinski, the victim, appellant, and Hurst came into her home that evening without being invited and that they were not

23.

welcome. Furthermore, the resident was uncomfortable with appellant being there because she anticipated something was going to happen. She tried to get away, but appellant sent Hurst with her while she pretended to go to her car to retrieve something, which made her feel compelled to return to the house. She knew appellant had a gun and, therefore, complied with his direction to give him her phone and car keys and to go upstairs because she did not want to get hurt. She felt like she was a hostage in her own home. However, the resident also testified appellant never threatened her directly, never told her she could not leave, and never kidnapped her. She also acknowledged that she initially denied have being at home that day, but explained that she had done so because she was afraid.

{¶ 58} Upon consideration of the duplex resident's testimony and other evidence as a whole, we find the jury did not lose its way in evaluating the evidence and drawing inferences from the evidence. As noted above, as a reviewing court, we cannot substitute our judgment for the trier of fact who saw the witnesses testify and assessed credibility. Appellant entered the resident's home uninvited, restricted her movements, and prevented her from leaving through implicit threats of harm. The fact that the resident did not understand the legal basis for charging appellant with kidnapping is irrelevant. Therefore, we find that appellant's conviction of kidnapping was not contrary to the manifest weight of the evidence. Appellant's sixth assignment of error is not well-taken.

24.

**{¶ 59}** Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.